Robert **HARKNESS** and Tamara Harkness, individually and as husband and wife, Appellants,

v.

Charles **HALL**, Donald Conrad and James Mathers, Orange County Commissioners for Orange County, Appellees.

No. 59A04–9609–CV–377.

Court of Appeals of Indiana.

July 21, 1997.

Publication Ordered Aug. 28, 1997.

Jay D. Allen, Salem, for Appellants–Plaintiffs.

Edward J. Liptak, Douglas A. Hoffman, Miller Carson Boxberger & Murphy LLP, Bloomington, for Appellees–Defendants.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Robert and Tamara Harkness appeal from the grant of Orange County Commissioners' motion for summary judgment on their claims against the county. We reverse.

### FACTS

On May 18, 1994, Tamara Harkness was driving her automobile on a certain county road in Orange County. Her husband Robert was a passenger. About .8 mile from the town of Valeene, the roadway descends a hill and curves toward a one lane bridge. After crossing the bridge, the roadway curves again and ascends another hill. "One Lane Bridge" signs are posted as the roadway approaches the bridge from either direction. Mrs. Harkness was familiar with this segment of roadway and the bridge itself. As she descended the hill toward the bridge, she observed another vehicle approaching from the other direction, "at the top of the other hill" across the bridge. (R. 279 at 24). This vehicle was driven by Gale Laws. Mrs. Harkness waved at Mr. Laws, and she thought he saw her.

Shortly before reaching the bridge, Mrs. Harkness entered the "curve which goes onto the bridge" and a "dip" in the roadway. *Id.* at 33. At that point, "bushes" on the side of the curve and the "dip" impaired her view.[1] *Id.* She was unable to see either the bridge or the roadway approaching from the other side of the bridge until she was "directly onto the bridge." *Id.* Mrs. Harkness was "about halfway over the bridge" when she saw Mr. Laws' vehicle coming toward her on the bridge. *Id.* at 18–19. She pulled her car as far as possible to the side of the bridge and stopped. A collision with the Laws vehicle ensued, and both Mr. and Mrs. Harkness were injured.

The Harknesses initially filed a complaint against Mr. Laws and his insurer. They amended their complaint to add a claim against the Orange County Commissioners ("Orange County") for negligence "regarding the aforesaid one-lane bridge." (R. 64).

On November 27, 1995, Orange County filed a motion seeking summary judgment because (1) it had no duty to clear bushes or weeds on private property; (2) it had no private duty to the Harknesses; (3) no signage claim existed; (4) it held design defect immunity pursuant to Ind.Code 34–4–16.5–3(17); and (5) it had no actual or constructive notice of any hazard or defect. Orange County designated the pleadings, portions of depositions of the Harknesses, and an affidavit of the Orange County Highway Supervisor in support of its contention that there was no genuine issue of material fact and it was entitled to summary judgment as a matter of law.

---

1. According to the Harknesses, she "lost sight of Gale Laws due to vegetation and the bridge railings," and pages 28–31 of her deposition are cited. Harknesses' Brief at 12. We find therein utterly no reference whatsoever by Mrs. Harkness to any bridge railings.

In response, the Harknesses submitted the following designated material: portions of the Highway Supervisor's deposition; portions of Mrs. Harkness' deposition; an affidavit of a professional engineer expressing an expert opinion; an affidavit attesting to certain photographs of the bridge and its approaches; Orange County's answers to interrogatories; and an affidavit of the owner of the firm which regularly inspected the bridge for Orange County attesting to various bridge inspection reports. The Harknesses contended that this material showed genuine issues of fact existed regarding their claim of negligent maintenance and signage of the roadway, thereby precluding the grant of summary judgment.

After hearing argument on Orange County's motion, the trial court granted the motion on June 12, 1996, issuing specific findings of fact and conclusions of law.

### DECISION

■ Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). In this case, the trial court entered specific findings of fact and conclusions of law. In the summary judgment context, specific findings aid appellate review, but they are not binding on this court. *DeBaets v. National Educ. Ass'n–South Bend,* 657 N.E.2d 1236, 1238 (Ind.Ct. App.1995). On appeal, we "stand in the shoes of the trial court," *id,* i.e., we apply the same standard used by the trial court.[2]

■ The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511, 513 (Ind. Ct.App.1994). Once the movant meets these two requirements, the burden shifts to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.*

■ Even if it appears that the nonmoving party will not be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Security State Bank v. Washburn,* 650 N.E.2d 74, 76 (Ind.Ct.App. 1995). All evidentiary material must be liberally construed in favor of the non-moving party. *Id.* Summary judgment is rarely appropriate in negligence cases, *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996).

■ As the trial court noted, "actionable negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff proximately caused by the defendant's breach of duty." (R. 235, citing *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991)). In its motion for summary judgment, Orange County claimed immunity "due to the fact that the design of the highway in question" occurred more than twenty years before the accident. (R. 78). It is undisputed that the bridge was built in 1913. Because a finding of governmental immunity would render moot further consideration of the issue of duty, we begin our analysis with an argument in that regard.

[8] The Harknesses argue that the court's holding that Orange County is immune from "any design defect claim," (R. 240), may not impermissibly immunize Orange County from a negligence claim alleging defective maintenance and signage. We agree.

■ Ind.Code 34–4–16.5–3 provides as follows:

A governmental entity . . . is not liable if a loss results from:

(17) Design of a highway (as defined in IC 9–13–2–72), if the claimed loss occurs at least twenty (20) years after the public highway was designed or substantially re-

---

2. Orange County's motion to strike Appendix A, submitted by the Harknesses with their reply brief is hereby granted. Only those portions of the record ·specifically designated to the trial court comprise the record for review. *Warner Trucking, Inc. v. Hall,* 653 N.E.2d 1057 (Ind.Ct. App.1995).

designed; *except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition.*

(Emphasis added). The law has long been "well established" that in Indiana a governmental entity is bound to exercise reasonable care and diligence to keep its highways in a reasonably safe condition for travel. *Walton v. Ramp,* 407 N.E.2d 1189, 1191 (Ind.Ct.App. 1980). The legislature appears to have codified this common law duty when it enacted the design immunity provision in 1988.

Orange County directs us to two authorities regarding the design defect immunity provision. First, it cites *Voit v. Allen County,* 634 N.E.2d 767 (Ind.Ct.App.1994), *trans. denied.* In *Voit,* we found the plaintiffs "essentially [sought] . . . to hold defendants liable for a failure to make what they allege to be needed improvements to" a certain road. *Id.* at 769. We held the design defect provision would "not serve as a basis for granting immunity" when a plaintiff sought "improvements to the current design" but the "[a]llegations of a failure to update, improve or modernize the roadway" in question instead directly implicated the immunity of governmental discretionary function. *Id.* Orange County made no claim for governmental discretionary function immunity, nor did it provide any evidence of a "formulation of basic policy" having taken place with regard to roadway maintenance. *See Id.* Thus, *Voit* is not persuasive in responding to the Harknesses' argument.

Orange County also cites *Jacobs v. Board of Comm'rs of Morgan County,* 652 N.E.2d 94, 98 (Ind.Ct.App.1995), *trans. denied,* as follows:

> According to I.C. 34–4–16.5–3–[ (17) ], when the claimed loss results from the design of a public highway, the County is immune from civil liability if the loss occurs at least 20 years after the highway was designed or substantially redesigned.

This statement, standing alone, does not alter the continuing duty of Orange County to keep its roadways in a reasonably safe condition for travel. I.C. 34–4–16.5–3(17) does not immunize the county from liability on the Harknesses' claim that the county breached this duty.

Because we find Orange County is not immune, we proceed to the claim for negligence; specifically, the issue of the county's duty. As the trial court also noted, the "question of whether a duty exists is a question of law to be resolved by the Court." (R. 235, citing *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991)). The Harknesses first argue that the trial court erred in concluding that *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278 (Ind.1994) required Orange County to have owed a private duty to the Harknesses in order to be held liable and that no such private duty existed under these facts. They direct us to a subsequent case in which a county's alleged negligence resulted in the backup of sewage and the property owner's child contracting typhoid; our analysis was as follows:

> The test adopted in *Mullin* does not apply to the circumstances of this case. The language used in the public/private duty analysis established in *City of Rome,* and adopted in *Mullin,* makes it clear that the test applies only in determining whether a duty is owed based on a governmental entity's alleged failure to act. The test does not apply to an alleged affirmative act of negligence where the entity itself has created the plaintiff's perilous situation. The court in *City of Rome* expressly limited its analysis to cases involving a municipality's failure to act, rather than its affirmative acts of negligence. *City of Rome [v. Jordan],* [263 Ga. 26] 426 S.E.2d [861] at 862 n. 2 [(1993)].

> \* \* \* \* \* \*

> . . . . However, the law recognizes a critical distinction between the failure to act, as in the failure to protect the welfare of citizens or to provide rescue services, and an affirmative act of negligence which, in itself causes the plaintiff's harm. *See City of Rome,* 426 S.E.2d at 862 n. 2. In the latter case, rather than a gratuitous undertaking to aid or alleviate the plaintiff's peril, the governmental entity has created the plaintiff's peril by some affirmative act.

Put another way, while an entity is generally shielded from liability on the ground that the decision not to act is a policy decision, or that the duty to act is owed to the public at large and not to any particular person, a public entity may nevertheless be liable for its affirmative acts of negligence. *Prosser & Keaton on Torts* § 131, at 1049 (5th ed. 1984), (1988 Supp. at 149); *see Hansen v. Audubon* (1985), Iowa, 378 N.W.2d 903, 907 (City's failure to repair or maintain existing sewer system was not discretionary function but affirmative negligence; City liable for sewage backup in plaintiff's house.).

*Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1067, 1068 (Ind.Ct.App.1995), *trans. denied.* The Harknesses argue that *Henshilwood*'s reasoning applies here to their claim of Orange County's "affirmative negligence," namely its "failure to maintain the roadway and bridge where the accident occurred." Harknesses' Brief at 19. Further, they argue, Orange County's "failure to maintain and sign a highway" is analogous to *Hansen v. Audubon,* the Iowa case where the city was liable for failure to maintain the sewer system, which was used by *Henshilwood* as an example of an affirmative act of negligence. Harknesses' Reply at 9. We agree.

Although Orange County cites various authority for the proposition that a governmental entity cannot be held liable for damages to an individual based upon a breach of a duty owed to the general public as a whole, none of these cases involve an injured motorist's contention that the government failed to keep a roadway in a reasonably safe condition for travel. The evidentiary material before the trial court demonstrated that Orange County maintained the roadway where the accident occurred. Accordingly, as a matter of law Orange County had a duty to keep it in a reasonably safe condition.

The duty of a governmental entity to maintain and repair roads within its control "does not attach unless the city has actual or constructive notice of a dangerous situation." *Utley v. Healy,* 663 N.E.2d 229, 233 (Ind.Ct.App.1996), *trans. denied.* The rule of constructive knowledge applies to "defects as might have been discovered by the exercise of ordinary care and diligence." *Galbreath v. City of Logansport,* 151 Ind. App. 291, 279 N.E.2d 578, 580 (1972); *see also Templeton v. City of Hammond,* 679 N.E.2d 1368 (Ind.Ct.App.1997). The Harknesses claim that material issues of fact exist as to whether Orange County had notice of a hazard or defect with respect to this particular section of roadway. According to the Harknesses, the references in the bridge inspection reports to collision damage on the bridge constitute notice to the county that there was a defect in the bridge. We also note that the bridge inspection reports bear various notations indicating that the approaches to the bridge were poor and should be improved and that certain signs should be added. Further, photographs before the court reflect the curving roadway as it approaches the bridge. *See Templeton.* These indeed disclose a material issue of fact as to whether the county had constructive notice of an allegedly dangerous condition, The question of whether a government had constructive notice of an alleged defect is a question for the trier of fact. *See Galbreath; Templeton; Tucher v. Brothers Auto Salvage Yard, Inc.,* 564 N.E.2d 560 (Ind.Ct.App.1991), *trans. denied.*

Summary judgment should not have been entered in favor of Orange County. An issue of material fact remains regarding the county's notice of an allegedly dangerous section of roadway. Whether the roadway was not in a reasonably safe condition for travel and such should have been discovered by the county's exercise of ordinary care and diligence, as well as whether the failure of the county to maintain and sign the roadway[3]

---

**3.** The Harknesses also challenge the trial court's conclusion that summary judgment should be granted to Orange County on "plaintiffs' sign claim" because the "uncontested facts" (including that Mrs. Harkness "knew the bridge was a one lane bridge" and had "driven the bridge on numerous prior occasions") indicate "there was no sign or signs which Orange County could have possibly placed on County Road 825 South to change the outcome of May 13, 1994." (R. 239). The affidavit of a professional engineer, which was designated evidence before the trial

was the proximate cause of the injuries to the Harknesses, is to be determined by a trier of fact.

 Because in further proceedings on this matter the Harknesses may pursue their alternative theory, namely that Orange County had a duty to remove vegetation "obscuring the view of a roadway near a curve," Harknesses' Brief at 30, we briefly address this contention. In its motion for summary judgment, Orange County argued that under *Hurst v. Board of Comm'rs of Pulaski County,* 476 N.E.2d 832 (Ind.1985), there was no statutory or common law duty on the part of county government to remove vegetation growing on the county right-of-way in order to improve roadway visibility. The trial court found the "vegetation which the plaintiffs allege obstructed their view in the present case was not in the county's right-of-way" and concluded that the "county has no authority, much less a duty, to enter private property and cut or remove someone else's trees, shrubs, or other vegetation." (R. 236).

Arguing on appeal that summary judgment was erroneous because Orange County indeed had a duty to remove vegetation, the Harknesses direct us to a statute enacted subsequent to *Hurst* which provides as follows:

> Each county highway department shall control detrimental plants (as defined in IC 15-3-4-1) and noxious weeds as required by law.

Ind.Code 36-2-18-1. However, their argument fails to follow the reference to I.C. 15-3-4-1, which provides as follows:

> As used in this chapter, "detrimental plant" includes Canada thistle (cirsium arvense), Johnson grass, sorghum alumun (sorghum halrphense), bur cucumber (sicyos angulatus), shattercane (Sorghum bicolor [L.] Moench spp. drummondii [Steud.] deWet), and, *in residential areas only, noxious weeds and rank vegetation.*

I.C. 15-3-4-1(a) (Emphasis added). The statute then requires the *property owner* to "destroy such detrimental plants." I.C. 15-3-4-1(c). Further, noxious weeds are specifically defined at I.C. 15-3-4.6-2 as Canada thistle (cirsium arvense), Johnson grass, sorghum almum (sorghum halepense), and bur cucumber (sicyos angulatus). No evidence indicated any of these plants obstructed the view of the roadway. No evidentiary material suggests, and the photographs do not indicate, that this was a residential area.

The Harknesses also cite Ind.Code 32-10-4-1, requiring "hedge or live fences" or "any other natural growths, except trees," which grow "at a highway intersection, or adjacent to any curve where the view of the highway may be intercepted" to be annually "cut and trimmed down to a height of not to exceed five (5) feet." The trial court had no designated evidentiary matter indicating that vegetation over five feet in height stood adjacent to the roadway curve. According to the designated portion of the deposition of the county highway supervisor, Orange County mowed "brush on the right-of-ways" continuously from May "until the season is over." (R. 126).

Orange County had no common law duty to clear vegetation that might have obscured Mrs. Harkness' view of the bridge and roadway. *See Hurst.* No evidence before the trial court created a material issue of fact which might have implicated a statutory duty on the part of Orange County to do so.

We reverse.

STATON, J., concurs.

RILEY, J., concurs in result with separate opinion.

RILEY, Judge, concurring in result.

I concur in result. The trial court granted Orange County's motion for summary judgment pursuant to the design immunity section of the Indiana Tort Claims Act ("the

---

court, stated that the physical characteristics of this particular section of roadway required additional signs to be posted. This evidence creates a material issue of fact. Moreover, the court's conclusion actually is a negative determination on the negligence element of proximate cause.

Where reasonable minds could draw different inferences from the evidence submitted, it is for the jury to make the determination of proximate cause. *S & S Truck Repairs v. Mofield,* 556 N.E.2d 1313, 1314 (Ind.1990).

Act"). The section of the Act upon which the trial court and Orange County relied provides that

[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

(16) design of a highway (as defined in IC 9–13–2–73), if the claimed loss occurs at least twenty (20) years after the public highway was designed or substantially redesigned; *except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition* . . .

Ind.Code 34–4–16.5–3(16). (Emphasis added). Whether a governmental entity is immune from liability under section 16.5–3 is a question of law for the courts. *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1118 (Ind.Ct.App.1995), *trans. denied.* The undisputed material evidence reveals that the bridge at issue was built in 1913. Because the Harknesses' accident occurred in 1994, Orange County is clearly insulated from liability concerning any allegations of the original design of the bridge. However, the Harknesses further allege that notwithstanding design defect immunity, Orange County had a continuing duty to maintain the bridge in a reasonably safe condition. This court had recently reaffirmed this long-standing duty as follows: "The State and its counties have a duty to maintain and repair the roads within their control. However, this duty does not attach unless the city has actual or constructive notice of a dangerous condition." *Templeton v. City of Hammond,* at 1372. (Citations omitted). In *Galbreath v. City of Logansport,* 151 Ind.App. 291, 279 N.E.2d 578, 580 (1972), we reviewed the law of constructive notice and said that "[t]he rule of constructive knowledge applies only to such defects as might have been discovered by the exercise of ordinary care and diligence."

In addition to the Harknesses' Notice of Tort Claim, the undisputed material evidence contains other reports of collision damage on the bridge at issue. The firm retained by the Orange County Commissioners to conduct periodic bridge inspections issued reports which specifically noted collision damage to the bridge. Furthermore, the firm retained to conduct these inspections repeatedly recommended replacement of the bridge, repair and widening of the bridge, additional curve signage, improvements in the approaches and replacement of the bridge railings. Accordingly, genuine issues of material fact remain as to whether Orange County owed and breached its continuing duty to maintain its roadways in a reasonably safe condition. More specifically, a genuine issue of material fact exists as to whether the County had actual or constructive notice of a dangerous condition on the roadway due to the bridge inspection reports and indications of collision damage on the bridge. A trier of fact should be given the opportunity to determine whether these undisputed facts are sufficient to put Orange County on notice of the alleged defect. Because I believe that these issues are more appropriately left to a jury's determination, I concur with the majority opinion to reverse the trial court's entry of summary judgment in favor of Orange County.

### ORDER

This Court having heretofore handed down its opinion in this cause on July 21, 1997 marked "Memorandum Decision, Not for Publication"; and

Come now the appellants, by counsel, and file herein their Motion to Publish Memorandum Decision, alleging therein that the decision should be published for the reason that the decision clarifies the law as to the application of the private duty test in governmental negligence cases and will make all members of the bar aware that the private duty test was not applied to highway design, signage and maintenance cases, which said Motion is more particularly in the following words and figures, to-wit:

(H.I.)

And come also the appellees, by their counsel, and file herein their Response to Appellants' Motion to Publish Memorandum Decision, which said Response is in the following words and figures, to-wit:

(H.I.)

And the Court, having examined said Motion and Response and being duly advised, now finds that the appellants' Motion to Publish Memorandum Decision should be granted and this Court's opinion heretofore handed down in this cause on July 21, 1997 as a Memorandum Decision, Not for Publication, should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The appellants' Motion to Publish Memorandum Decision is granted; this Court's opinion heretofore handed down in this cause on July 21, 1997 marked "Memorandum Decision, Not for Publication" is now ordered published;