Annie KANTZ and James Kantz, Appellants–Plaintiffs,

v.

ELKHART COUNTY HIGHWAY DEPARTMENT, Appellee–Defendant.

No. 20A04–9708–CV–341.

Court of Appeals of Indiana.

Nov. 10, 1998.

William T. Webb, Michael J. Anderson, South Bend, for Appellants–Plaintiffs.

Michael F. Deboni, David E. Swihart, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for Appellee–Defendant.

## OPINION

STATON, Judge.

Annie and James Kantz appeal the trial court's grant of summary judgment in favor of the Elkhart County Highway Department (the "County"). The Kantzes raise three issues on appeal which we restate as two:

I.   Whether the County owed Mrs. Kantz a duty to remove a tree stump located on the right-of-way of a county road.

II.  Whether Mr. Kantz's claim is barred by the Indiana Tort Claims Act because he did not file a tort claims notice within 180 days of the accident, instead filing his complaint within 180 days.

We affirm in part, reverse in part, and remand.[1]

The facts most favorable to the non-movant reveal that Mrs. Kantz and her son, Douglas Cook, were involved in an accident on July 7, 1994, when the vehicle in which they were traveling struck a tree stump. Cook, who was driving, lost control of the vehicle after it struck the stump. Mrs. Kantz was injured.

The stump was located adjacent to a county road and was within the County's right-of-way. County employees had cut the tree

---

1. We grant the Kantzes' November 11, 1997 petition to supplement the record and deny their September 19, 1997 petition to modify the record.

down on February 26, 1992 because the County had received a complaint about its proximity to the road and because the tree had marks on it indicating that it may have been hit by a vehicle. The County did not remove the stump, which was between three and four feet high.

On November 18, 1994, the Kantzes filed suit against the County, alleging that the County's negligence in failing to remove the stump caused Mrs. Kantz's injuries and that these injuries resulted in Mr. Kantz losing the care, comfort and companionship of his wife. Mrs. Kantz had given the County a tort claim notice within 180 days of the accident, on August 5, 1994. Mr. Kantz did not file a tort claim notice. The County sought summary judgment, arguing that it did not owe Mrs. Kantz a duty to remove the tree stump and that Mr. Kantz's claim was time barred because he did not file a tort claim notice within 180 days of the accident. The trial court granted the County's motion; this appeal ensued.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### Duty

The Kantzes argue that the County owed Mrs. Kantz a duty to remove the tree stump struck by the vehicle in which she was riding. The Kantzes' claim is based upon a theory of negligence. In order to prevail on a claim of negligence, a plaintiff must prove: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App. 1994), *trans. denied.* Generally, the existence of a duty is a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), *reh. denied.* However, factual questions may be interwoven in this issue, thus rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *State v. Cornelius*, 637 N.E.2d 195, 198 (Ind. Ct.App.1994), *trans. denied.*

It is well-established that a "governmental entity is bound to exercise reasonable care and diligence to keep its highways in a reasonably safe condition for travel." *Harkness v. Hall*, 684 N.E.2d 1156, 1160 (Ind.Ct. App.1997), *trans. pending* (citing *Walton v. Ramp*, 407 N.E.2d 1189, 1191 (Ind.Ct.App. 1980)); *see also Bodnar v. City of Gary*, 629 N.E.2d 278, 279–80 (Ind.Ct.App.1994), *reh. denied* ("Indiana courts have recognized a general duty on the part of the state, counties, and municipalities to exercise reasonable care in the design, construction, maintenance, and repair of the roads and highways within their control."). Furthermore, governmental entities have not been immunized from liability for breaching this duty. The Indiana Tort Claims Act provides, in part:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

(16) design of a highway (as defined in IC 9–13–2–73), if the claimed loss occurs at least twenty (20) years after the public

highway was designed or substantially re-designed; *except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition....*

IND.CODE § 34–4–16.5–3(16) (1993) (emphasis added).[2] We first address whether the County, based upon its duty to exercise reasonable care and diligence to maintain safe highways, had a duty to remove the tree stump.

Resolution of this issue depends in part upon the underlying facts. The Kantzes argue that they raised a genuine issue of material fact regarding whether the vehicle in which Mrs. Kantz was riding left the road prior to striking the tree stump. The designated material reveals that both Mrs. Kantz and her son testified during their depositions that their vehicle did not leave the road prior to striking the stump. The County designated a great deal of convincing evidence which suggests otherwise. However, on summary judgment the evidence must be viewed in a light most favorable to the non-movant. *Reed,* 627 N.E.2d at 1363. Too, for summary judgment purposes "this court is concerned only with the *existence* of factual questions, and not with a litigant's ability to sustain the burden of proof upon those issues." *Bandido's Inc. v. Journal Gazette Co.,* 575 N.E.2d 324, 327 (Ind.Ct.App.1991), *trans. denied* (emphasis in original). Therefore, we must assume that the vehicle did not leave the road prior to striking the stump.

■ Based upon this assumption, it is clear that the County owed Mrs. Kantz a duty to remove the stump. It is undisputed that the County had notice of the existence of this stump and its proximity to the road because county employees cut the tree down two years before the accident in question. The County also had knowledge that the stump was potentially dangerous because its decision to remove the tree was based, in part, upon the presence of marks indicating that it may have been struck by a vehicle. *See Harkness,* 684 N.E.2d at 1161 (the duty to repair and maintain roads attaches only when the municipality has actual or constructive notice of the dangerous condition). Moreover, a county cannot be said to have kept a county road in a reasonably safe condition for travel where vehicles may strike a tree stump without leaving the surface of the road. We find the *Bodnar* case instructive in this regard. In *Bodnar,* the plaintiff collided with another vehicle when she ran a red light. She alleged that she was unable to see the traffic signal because her view was obstructed by trees. Observing that a municipality has a duty to maintain and repair roads and traffic signals, we held that the city had a duty to assure the visibility of the traffic signal, and thus, a duty to remove or trim trees obscuring the signal. 629 N.E.2d at 280. Likewise, we hold that the County is required to remove trees and portions of trees which prevent a motorist from safely traveling on the surface of a county-maintained road.

■ The County argues that even if it owed a duty to remove the tree stump, the duty was a public duty, and not one owed privately to Mrs. Kantz. "[W]here a plaintiff seeks recovery against a governmental entity, the relationship between the parties must be one that gives rise to a private duty owed to a particular individual." *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994). The Indiana Supreme Court adopted a three-part test in *Mullin* for determining whether a governmental entity owes an individual a private duty: "(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of an injured party; (2) knowledge on the part of the municipality that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking." *Id.,* 639 N.E.2d at 284. The County contends that under this test, it did not owe Mrs. Kantz a private duty.

■ The County's reliance on the *Mullin* test is misplaced. This court held in *Henshilwood v. Hendricks County,* 653 N.E.2d 1062 (Ind.Ct.App.1995), *trans. denied,* that the *Mullin* analysis does not apply in cases

2. This provision has been recodified at IND.CODE § 34–13–3–3(17) (1998).

where the plaintiff alleges that the government's affirmative act of negligence created the situation in which the plaintiff suffered harm. *Id.* at 1068. In that case we held that a County's negligence in failing to maintain a ditch and in failing to warn property owners of contamination in the ditch was affirmative action causing harm to particular individuals, and that this action gave rise to a private duty. *Id.* Following *Henshilwood*, we held in *Harkness* that a county has an affirmative obligation to maintain roadways under its control. 684 N.E.2d at 1161. Further, we held a county has a private duty to motorists who are injured as a result of the county's failure to maintain its roads in a reasonably safe condition. *Id.* Likewise, we hold in this case that the County had a private duty to Mrs. Kantz to maintain its roads and to remove obstructions, of which it had notice, that rendered the road unsafe.[3]

Although our determination that the County owed Mrs. Kantz a private duty is dispositive and requires remand, we address an additional question regarding the extent of the County's duty since it is likely to recur on remand. The Kantzes argue that even if the fact-finder determines that the vehicle left the road prior to striking the stump, the County still owed Mrs. Kantz a duty to remove the stump. Although the County must exercise diligence to keep its highways in a reasonably safe condition for travel, we cannot say that a stump which does not affect motorists who remain on the surface of a road violates this duty as a matter of law. Accordingly, we must turn to the balancing test set forth in *Webb* to determine whether the County owed Mrs. Kantz a common law duty to remove the stump. The Indiana Supreme Court has identified the following three factors that a court balances when determining whether to impose a duty at common law: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. 575 N.E.2d at 995.

First, we consider whether the County and Mrs. Kantz had a relationship. It is undisputed that the County was responsible for maintaining the road on which the accident occurred. Too, the County owned the right-of-way containing the tree stump. Mrs. Kantz was a member of the traveling public for whom the County maintained the road. We have held that the owners of land adjacent to a highway have a relationship with persons rightfully using the highway. *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1381 (Ind.Ct.App.1996), *trans. pending.* Likewise, we now hold that a governmental entity responsible for maintaining a road and its right-of-way has a relationship with motorists and their passengers who are rightfully using the road. Therefore, the County and Mrs. Kantz had a relationship.

Second, we consider the foreseeability element. The focus in analyzing foreseeability is whether the victim and the type of harm suffered were reasonably foreseeable. *Webb*, 575 N.E.2d at 997.

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

**3.** Citing *Benthall v. City of Evansville*, 674 N.E.2d 580, 585 (Ind.Ct.App.1996), *trans. denied,* the County argues that "an affirmative act by a government entity does not, in and of itself, establish a private duty. There must be some causal link between the affirmative act and the victim's peril." Appellee's Brief at 21. It then suggests the Kantzes' claim is based solely upon the County's act of cutting down the tree, and argues that this act did not cause Mrs. Kantz's injuries. The proposition of law cited by the County is correct; however, the County has misapplied it to this case. The Kantzes' claim is not based solely upon the County's act of cutting down the tree. Rather, the Kantzes have alleged that Mrs. Kantz's injuries were caused by the County's affirmative act of failing to maintain its roads in a reasonably safe condition by *also removing the tree stump.* Accordingly, based upon the Kantzes' allegations, there is a causal link between Mrs. Kantz's injuries and the County's affirmative act.

*Id.* (citations omitted). The question presented here is whether it is reasonably foreseeable for a motorist to be injured when her vehicle leaves the road and strikes a tree stump located in the right-of-way. Although Indiana courts have not previously considered this precise issue, a number of cases are instructive.

In *Bush v. Northern Indiana Public Service Co.*, 685 N.E.2d 174 (Ind.Ct.App.1997), *reh. denied, trans. pending,* this court held that "it might be reasonably foreseeable that a motorist could leave the road and collide with a utility pole." *Id.* at 177. We observed that circumstances which might lead to reasonable foreseeability include where the "pole is located on a sharp curve, when several prior accidents involving the same pole have occurred, or when the pole is located on an island in the middle of a dangerous intersection." *Id.* at 177–78. However, we held that when there is "nothing inherent in the location of the pole to put the utility on notice that an accident might occur," the harm is not foreseeable. *Id.* at 178; *But see Goldsberry v. Grubbs,* 672 N.E.2d 475, 480 (Ind.Ct.App.1996), *trans. pending* (holding that regardless of the underlying facts, it is foreseeable that motorists will leave the traveled portion of a road and strike adjacent utility poles).

In *Indiana Limestone Co.,* we held that it was reasonably foreseeable that the decedent's vehicle might leave the roadway and plunge into a quarry. 672 N.E.2d at 1382. In that case, a limestone quarry was located approximately twenty-five feet off the road and was near a sharp curve at the bottom of an incline. Too, patches of ice were on the road. We affirmed the trial court's decision that the owner of the quarry might have owed the decedent a duty. *Id.* at 1384.

Finally, in *Gilliam v. Contractors United, Inc.,* 648 N.E.2d 1236 (Ind.Ct.App.1995), *trans. denied,* we considered a construction company's duty to a motorist. The company had a contract to pave a portion of an interstate. The day of the accident, the company was paving the left shoulder of the southbound lanes. The southbound interstate had two lanes and a right and left shoulder. The company had closed the left shoulder and the left lane and signs were directing traffic into the right lane. An abandoned car was located on the right shoulder in the construction area. As the plaintiff approached the construction site on his motorcycle, he saw the signs directing traffic to the right. He was already in the right lane, but he moved onto the right shoulder. Eventually he saw the abandoned car and thought it was moving. By the time he realized the vehicle was stopped, it was too late, and he collided with it.

The company argued that the one lane which remained open was sufficient and that it had not directed the plaintiff onto the shoulder. However, we held that "[d]ue to the circumstances created by the construction it was foreseeable that motorists would leave the traveled portion of the highway and attempt to use the right shoulder...." *Id.* at 1239. We also held it foreseeable that a motorist would collide with the abandoned vehicle given its location. *Id.*

In each of the above cases, this court held that it was foreseeable for a motorist to leave the traveled portion of a road and to suffer harm by striking an object adjacent to the road. As we held in *Bush,* however, where there is nothing inherent in the location of the object to put its owner on notice of the potential danger to motorists, the harm is not foreseeable. 685 N.E.2d at 178. *See also Indiana Limestone,* 672 N.E.2d at 1383 and *Gilliam,* 648 N.E.2d at 1239 (both considering the facts and circumstances surrounding the accident to determine foreseeability). Here, the designated evidence reveals that the vehicle deviated from a road which was only eighteen feet wide and struck a tree stump located approximately twelve inches off the road. Approximately two years before the accident, the County was informed of the tree's proximity to the road. Upon inspection by County employees and a determination that it had marks indicating that it may have been struck by a vehicle, the tree was cut down, but a three to four foot high stump remained. The same person who initially informed the County regarding the tree called at least three times after the tree was cut to inform the County that the stump was a hazard. Based upon these facts, we hold

that it was reasonably foreseeable that a vehicle would leave the paved portion of the county road and strike the tree stump.

Finally, we weigh the public policy considerations of this case. Generally, public policy weighs strongly against finding that a party, who owns land adjacent to a public road, has a duty to remove trees that a vehicle may foreseeably strike if it leaves the paved portion of the road. Such a burden would be onerous, if not impossible, for landowners and municipalities to meet. The same general observation applies to tree stumps. We are unwilling to apply a blanket rule which imposes a duty upon landowners to remove every stump which could foreseeably be struck by a motorist who leaves the road.

The County's argument that trees and stumps differ from other roadside obstacles such as utility poles and quarries is well-taken. Trees and stumps are natural obstructions, not necessarily placed by the adjacent landowner, whereas utility poles and quarries are artificial objects, the location of which is always chosen by the landowner or his predecessor in interest. The authors of the RESTATEMENT (SECOND) OF TORTS (1965) recognized this distinction when they wrote § 368.

### § 368. Conditions Dangerous to Travelers on Adjacent Highways

A possessor of land who creates or permits to remain thereon *an excavation or other artificial condition* so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel.

(Emphasis added). In adopting § 368, the American Law Institute recognized that a landowner may be held liable for creating an unreasonable risk to passing motorists where the land contains an "excavation or other artificial condition," but did not address liability when the obstruction is a natural condition such as a tree.

Despite our reluctance to impose a general duty on landowners to remove trees and stumps, we do not believe that public policy concerns preclude us from finding a duty based upon the facts of this case. Here, the County received notice of the potentially dangerous tree, which contained markings indicating that it may have been struck by a vehicle. It then removed the tree, leaving a three to four foot stump in its place. This stump remained close to the road, approximately twelve inches away. Given the County's actual knowledge of the potential danger to passing motorists created by this particular tree and its stump, we believe public policy weighs in favor of imposing a duty to remove the stump.[4]

The County has identified similar cases from other jurisdictions which have reached an opposite conclusion, that landowners do not owe motorists a duty to remove tree stumps adjacent to the highway. We believe those cases are distinguishable.

In *Paquette v. Joyce*, 117 N.H. 832, 379 A.2d 207 (N.H.1977), a vehicle in which the plaintiff was a passenger deviated from a public road and collided with a stump on the defendants' property. The accident occurred at a location where the road curved sharply. Approximately two years before the collision, the defendants had removed the tree, leaving only a three foot stump. During the years which the defendants owned the property prior to the collision, a number of vehicles had left the road and collided with objects in the defendants' yard, including a tree.

The plaintiff sued, alleging that the defendants knew or should have known that the stump created an unreasonable risk to motorists and that they had a duty to remove

---

4. This case can be distinguished from *Hurst v. Board of Comm'rs of Pulaski County*, 476 N.E.2d 832 (Ind.1985). In *Hurst*, our supreme court held that a county does not have a duty to "remove weeds and vegetation at intersections in order to improve visibility." *Id.* at 834. However, the facts of that case do not indicate whether the county had specific knowledge of the dangerous intersection created by the weeds. Thus, the case does not address whether a duty would arise under such conditions.

the stump or otherwise take steps to prevent harm to motorists who deviated from the road. The plaintiff argued that by cutting down the tree and leaving a stump the defendants "created and permitted to remain an artificial condition unreasonably dangerous to users of the highway." *Id.*, 379 A.2d at 209. Citing § 368 of the Restatement, the New Hampshire Supreme Court observed that the defendants would have had no obligation to remove the tree itself because it was not an artificial condition. *Id.* Further, it noted that leaving the stump created no greater risk of impact than did the entire tree. *Id.* Therefore, the court concluded that the defendants owed no duty to the injured motorist. *Id.*

Although there is quite a bit of similarity, the facts in *Paquette* differ in one important respect from those in the present case. As previously noted, in determining whether a duty exists under Indiana law, courts must weigh and balance three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb*, 575 N.E.2d at 995. We see no significant difference between the two cases with respect to the second two factors. In both cases, the defendants knew the tree stump existed and that its location made it susceptible to being struck by a vehicle leaving the road. Given this knowledge, public policy concerns would weigh in favor of requiring the landowner to remove the stump. However, the relationship between the parties is significantly different in the two cases.

In *Paquette*, the defendants were private individuals who owned property adjacent to a public road. There was no special relationship between those landowners and the motorists traveling along the road. Here, the defendant is the County, the very entity responsible for maintaining the safety of the roads. Thus, the County has a relationship with the individuals who travel on its roads. Given this more significant relationship, we

have little difficulty in imposing a duty upon the County to remove a potentially dangerous stump, of which it has actual knowledge, that is located within the County's right-of-way.[5] On remand the trial court should instruct the jury in a manner consistent with this opinion.[6]

## II.

### *Tort Claims Act Notice*

Mr. Kantz argues that the trial court erred by granting summary judgment in favor of the County on his claim for the loss of his wife's care and companionship. The court granted summary judgment because Mr. Kantz did not file a tort claim notice within 180 days of the collision. Mr. Kantz contends that his complaint, filed within 180 days of Mrs. Kantz's accident, was sufficient to comply with the notice requirements of the Indiana Tort Claims Act ("ITCA"). IND. CODE § 34–4–16.5–7 (1993).[7] We disagree.

IC 34–4–16.5–7 provides: "... a claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision; and (2) the Indiana political subdivision risk management commission ...; within one hundred eighty (180) days after the loss occurs." Further, IND.CODE § 34–4–16.5–9 (1993) states that a governmental entity must approve or deny any claim within ninety days after it is filed with the entity. Finally, IND.CODE § 34–4–16.5–12 provides: "A person may not initiate a suit against a governmental entity unless his claim has been denied in whole or in part."

Although Mr. Kantz filed his complaint within 180 days of the accident, he did not provide the County with notice of his claim prior to filing his lawsuit. Because the County did not have notice, it did not have an opportunity to approve or deny his claim

---

5. The County also cites *Alberti v. Rydill*, 152 A.D.2d 520, 543 N.Y.S.2d 463 (N.Y.App.Div. 1989) for the same proposition as *Paquette*. The defendant landowner in *Alberti* was a county. However, the county in *Alberti*, unlike the present case, was not responsible for maintaining the road from which the motorist deviated. *Id.* at 464.

6. Because, in considering the facts most favorable to Mrs. Kantz, we have held that the County owed her a duty, we need not address her argument that the County assumed a duty.

7. This provision has been recodified at IND.CODE § 34–13–3–8 (1998).

pursuant to IC 34–4–16.5–10.[8] Furthermore, IC 34–4–16.5–12 specifically prohibits a person from bringing suit until his claim has been denied by the governmental entity under IC 34–4–16.5–10. We have previously held that, in enacting the notice provisions of the ITCA, the legislature intended for the notice of claim and the complaint to be two separate documents and that the complaint could only be filed after denial of the claim by the governmental entity. *Indiana Dep't of Public Welfare v. Clark,* 478 N.E.2d 699, 703 (Ind.Ct.App.1985), *trans. denied, cert. denied,* 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986), *overruled on other grounds, George v. Hatcher,* 527 N.E.2d 199, 200 (Ind.Ct.App.1988). Thus, we concluded that a complaint alone could not satisfy the notice provisions of the ITCA. *Id.* We reaffirm that holding today[9] and conclude that the trial court did not err by granting the County summary judgment on Mr. Kantz's claim.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, C.J., and DARDEN, J., concur.

---

**8.** We reject the Kantzes' argument that Mr. Kantz's claim was denied in part as a result of the County's denial of Mrs. Kantz's claim. The Kantzes contend that Mr. Kantz's claim for loss of his wife's services is derivative of Mrs. Kantz's claim, and that denial of her claim necessarily resulted in the denial of his. We rejected the same argument in *Putnam County v. Caldwell,* 505 N.E.2d 85, 87 (Ind.Ct.App.1987), *reh. denied,* and do so again today.

**9.** The Kantzes cite two cases in support of their argument that Mr. Kantz's complaint was sufficient to comply with the notice provisions of the ITCA. In *City of Hobart Sewage Works v. McCullough,* 656 N.E.2d 1185 (Ind.Ct.App.1995), *trans. denied,* we held that the plaintiffs' complaint, filed in small claims court within 180 days of the incident giving rise to the claim, was sufficient to comply with IND.CODE § 34–4–16.5–9 (1993),

which discusses the necessary content of a tort claim notice. *Id.* at 1189. In holding that the plaintiffs' complaint was sufficient, we did not address the requirement that a governmental entity first deny a claim prior to bringing suit. IC 34–4–16.5–12. To the extent that *City of Hobart* may be construed to permit a claimant to file a lawsuit without first giving the governmental entity ninety days in which to approve or deny the claim, *see* IC 34–4–16.5–10, it is incorrect.

In *Lawrence County Comm'rs v. Chorely,* 398 N.E.2d 694 (Ind.Ct.App.1979) the plaintiff also failed to file a notice. However, in holding that her lawsuit was not barred by the ITCA, we concluded that the county may have waived its right to receive notice or that it may have been estopped from asserting the right. *Id.* at 697. There is no contention in the present case that the County waived its right to notice or that it is estopped from asserting it.