# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 01 2018, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

W. Brian Burnette
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
Richard T. Mullineaux
Whitney E. Wood
Kightlinger & Gray, LLP
New Albany, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Saegesser Engineering, Inc.,
*Appellant-Plaintiff,*

v.

Terry Amick,
*Appellee-Defendant.*

August 1, 2018

Court of Appeals Case No.
72A01-1711-PL-2660

Appeal from the Scott Circuit Court

The Honorable James B. Hancock, Special Judge

Trial Court Cause No.
72C01-1508-PL-120

**Barnes, Senior Judge.**

# Case Summary

Saegesser Engineering, Inc. ("Saegesser") appeals the trial court's grant of summary judgment to Terry Amick. We affirm.

# Issue

Saegesser raises several issues. We address one dispositive issue, which we restate as whether Amick was entitled to summary judgment pursuant to the Indiana Tort Claims Act.

# Facts

Saegesser is an engineering company that has provided professional engineering services to the City of Scottsburg, including engineering services related to the construction of a walking trail known as the Moonglo Trail and the expansion of Moonglo Road to be a uniform width. Bill Graham served as Scottsburg's mayor during the relevant time, and Amick was an elected member of the City Council. Amick was also a commissioner of the Scottsburg Redevelopment Commission. Such redevelopment commissions are statutorily authorized by Indiana Code Section 36-7-14-3. Three of the five commissioners for the Redevelopment Commission are appointed by the mayor, and two are appointed by the City Council. *See* Ind. Code § 36-7-14-6.1. Amick was appointed by the City Council. During this time, Amick was also running for mayor against Graham.

During a public Redevelopment Commission meeting on July 2, 2015, Saegesser asked for permission to begin work on Moonglo Road from Highway

31 to Wilson Road. Commissioners Karen Gricius and Amick raised an issue with the amount of funds that had been paid to Saegesser. Amick "stated that he believed there had been a misappropriation of funds on the Trail Project." Appellant's App. Vol. II p. 238. Amick also raised an issue regarding the placement of pavement on Hampton Oaks property. Amick "stated that he would ask the City Council to investigate spending on the Trail and would file suit, if necessary, to stop funding on the Moonglo Road Project." *Id.*

[5] At a July 6, 2015 City Council meeting, Amick apologized for using the phrase "misappropriation of funds" during the Redevelopment Commission meeting and said that "overspending" would have been a better term. *Id.* at 242. He asked the City Council to conduct an investigation regarding expenses for the Trail. Amick's motion passed the City Council unanimously.

[6] On August 6, 2015, the Redevelopment Commission met again. Amendments were made to the minutes of the July 2nd meeting to add the following statements. Amick stated "that he definitely believes that Saegesser Engineering is responsible for a misappropriation of funds with regard to the Moonglo Trail project" and that Saegesser "has not provided proper oversight on how funds were spent." *Id.* at 245. Commissioner Bill Hoagland asked Amick "if he wanted to withdraw his statement that Saegesser Engineering had misappropriated City funds," and Amick "reiterated his belief that there had been a misappropriation of funds which had been misspent." *Id.* Amick stated that the City Council would investigate, that he would contact the City Council attorney to stop additional work on Moonglo Road, that he would contact the

City Council attorney about suing Saegesser, and that he would not approve Saegesser's invoice. Amick also claimed that Saegesser "stole a part of Kristen Hall's property" and asked "if it was Saegesser Engineering or Mayor Graham that made a mistake on the Trilogy property." *Id.*

On August 13, 2015, Saegesser filed a complaint against Amick. Saegesser alleged that Amick's statements were "made with the intent to attribute the crimes of theft . . . and conversion . . . to Saegesser Engineering" and that the statements were "known by him to be false, and were made without justification or cause, and maliciously for the purpose of disparaging [Saegesser's] professional reputation and subjecting [Saegesser] to criminal prosecution." *Id.* at 11. Saegesser requested an award of damages against Amick.

Amick filed a motion for summary judgment. He argued that Saegesser's claims were barred by the Indiana Tort Claims Act because he was acting within the scope of his employment with the City of Scottsburg at the time of the statements and was entitled to immunity. Amick argued that the claim should have been asserted against the City and that Saegesser failed to comply with the notice requirements of the ITCA. Amick also argued that he was entitled to summary judgment on the defamation claim based on absolute immunity, qualified immunity, lack of actual malice, and lack of defamatory imputation.

[9] Saegesser filed a response to the motion for summary judgment and argued that Amick was not acting within the scope of his duties as a member of the Redevelopment Commission when he made the statements. Saegesser also argued that it complied with the ITCA notice requirements by filing the complaint against Amick in a timely manner. Finally, Saegesser also argued that Amick was not entitled to absolute immunity or qualified immunity and that there were genuine issues regarding the elements of the defamation claim.

[10] On October 19, 2017, the trial court granted Amick's motion for summary judgment. Saegesser now appeals.

## Analysis

[11] Saegesser challenges the trial court's grant of summary judgment to Amick. Summary judgment is appropriate only when the moving party shows there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *Schoettmer v. Wright*, 992 N.E.2d 702, 705 (Ind. 2013); *see also* Ind. Trial Rule 56(C). Once that showing is made, the burden shifts to the non-moving party to rebut. *Schoettmer*, 992 N.E.2d at 705-06. When ruling on the motion, the trial court construes all evidence and resolves all doubts in favor of the non-moving party. *Id.* at 706. We review the trial court's grant of summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Id.*

[12] The Indiana Tort Claims Act ("ITCA") provides that a government employee may not be named as a party to a civil suit where he acted "within the scope of

[his] employment." Ind. Code § 34-13-3-5(a). The ITCA "provides substantial immunity for conduct within the scope of the employees' employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000).

> A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>
> (1) criminal;
>
> (2) clearly outside the scope of the employee's employment;
>
> (3) malicious;
>
> (4) willful and wanton; or
>
> (5) calculated to benefit the employee personally.
>
> The complaint must contain a reasonable factual basis supporting the allegations.

I.C. § 34-13-3-5(c).

[13] Here, Saegesser argues that its complaint against Amick was proper because Amick was not acting within the scope of his employment as a member of the Redevelopment Commission. Amick, relying on *Celebration Fireworks,* argues that the complaint was properly dismissed. In *Celebration Fireworks*, the Plymouth Fire Chief, Wayne Smith, conducted an inspection at a building that Celebration Fireworks was leasing. Smith told the lessor that "[t]hese people do not pay their bills," "[g]et your money in advance," and "[t]hese people are

gypsies." *Celebration Fireworks*, 727 N.E.2d at 451. During the visit, Smith also said that "a firewall would have to be constructed to separate the fireworks sale area from the rest of the motorcycle shop." *Id.* Celebration Fireworks filed a complaint against Smith, and the trial court granted Smith's motion for summary judgment. The trial court concluded that the statements were made within the scope of Smith's employment and that the tort claim notice against the City of Plymouth was not timely filed.

On appeal, the "threshold question" was whether Smith was acting within the scope of his employment when he made the statements. *Id.* at 453. Our supreme court noted:

> The Restatement of Agency provides some general guidance for assessing the type of conduct that is within the scope of employment: "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Restatement (Second) Agency § 229 (1958).
>
> The Restatement stresses that "[t]o be incidental, however, [an act] must be one which is subordinate to or pertinent to an act which the servant is employed to perform." Restatement (Second) Agency § 229 cmt. b (1958). Even tortious acts may fall within the scope of employment. In *Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993), we said an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business." *Kemezy*, 622 N.E.2d at 1298 (quoting *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989)).

The U.S. Supreme Court recently noted that this doctrine "has traditionally defined the 'scope of employment' as including conduct 'of the kind [a servant] is employed to perform,' occurring 'substantially within the authorized time and space limits,' and 'actuated, at least in part, by a purpose to serve the master,' but as excluding an intentional use of force 'unexpectable by the master.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 793, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting Restatement (Second) Agency § 228(1)).

*Id.* Our supreme court concluded that Smith "[p]lainly" was "on public time, performing a function that was central to the position he held." *Id.* Smith's statements were "incidental to an activity that was part of the chief's duty, inspecting business premises." *Id.* at 454. The court noted:

If employees were easily declared outside the scope of the act for things they say during the otherwise ordinary course of their employment, the threat to "their independent judgment necessary to carry out their duties," [*Indiana Dept. of Correction v. Stagg*, 556 N.E.2d 1338, 1343 (Ind. Ct. App. 1990), *trans. denied*], would be greater. Moreover, claimants would more often find themselves limited to recovery against the private assets of employees rather than those of governments.

*Id.* Consequently, the court affirmed summary judgment to Smith.

[15] Here, Amick's statements regarding Saegesser were made during a public meeting of the Redevelopment Commission of which Amick was a member. The statements concerned funds spent on two projects—Moonglo Trail and Moonglo Road—and other problems with those projects. The comments were clearly pertinent to Amick's position on the Redevelopment Commission.

Saegesser argues *Celebration Fireworks* is distinguishable because Amick's comments were made "to advance his own interests in running for mayor by sullying [Saegesser's] reputation to discredit Mayor Graham, his election opponent." Appellant's Br. p. 26. Regardless of Amick's unspoken alleged motives in making the statements, the topics of the statements were still relevant to and related to his duties as a member of the Redevelopment Commission. Saegesser also argues that the fire chief's comments were made "in a private setting" while the comments here were made in a public meeting of the Redevelopment Commission. *Id.* at 27. This fact seems to further show that the statements were within the scope of Amick's employment. Finally, Saegesser argues that *Celebration Fireworks* is distinguishable because "Amick publicly alleged a crime had been committed." *Id.* at 28. Saegesser does not clarify in its appellant's brief the crime alleged to have been committed, and regardless, "[e]ven criminal acts may be considered as being within the scope of employment if 'the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope.'" *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quoting *Stropes*, 547 N.E.2d at 247). We conclude that Amick's statements were closely associated with his employment relationship and fall within the scope of his employment. Based on *Celebration Fireworks*, we conclude that Amick was acting within the scope of his employment.

[16] Next, Saegesser argues that, even if Amick was acting with the scope of his employment, it timely filed notice pursuant to the ITCA. Indiana Code Section

34-13-3-8(a) provides that a claim against a political subdivision is barred unless notice is filed with the "governing body of that political subdivision" and "the Indiana political subdivision risk management commission" within one hundred eighty days after the loss occurs. "Where a plaintiff elects to sue a governmental employee in his or her individual capacity, 'notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment.'" *Chang v. Purdue Univ.*, 985 N.E.2d 35, 51 (Ind. Ct. App. 2013) (quoting *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996), *trans. denied*), *trans. denied*. Because Amick's conduct was undertaken as part of his employment, Saegesser was required to comply with the notice requirements of the ITCA. *See Chang*, 985 N.E.2d at 51-52. Saegesser argues that the filing of his complaint complied with the notice requirements, but we rejected this same argument in *Kantz v. Elkhart Cty. Highway Dep't*, 701 N.E.2d 608, 616 (Ind. Ct. App. 1998), *trans. denied*. "[T]he legislature intended for the notice of claim and the complaint to be two separate documents and that the complaint could only be filed after denial of the claim by the governmental entity." *Kantz*, 701 N.E.2d at 616. A complaint "alone [cannot] satisfy the notice provisions of the ITCA." *Id.* Saegesser's complaint against Amick does not satisfy the requirement that it provide notice to the governing body of the political subdivision and the Indiana political subdivision risk management commission.

[17] We do not condone the sort of ad hominem attack seen here. However, because Amick was acting within the scope of his employment and Saegesser

failed to comply with the notice requirements of the ITCA, we conclude that the trial court properly granted summary judgment to Amick. *See also Bushong*, 790 N.E.2d at 474 (holding that the trial court properly granted summary judgment to an employee sued in his individual capacity).

## Conclusion

[18] The trial court properly granted summary judgment to Amick on Saegesser's complaint. We affirm.

[19] Affirmed.

Vaidik, C.J., and Pyle, J., concur.