**Kelley BUSH, Appellant–Plaintiff,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY; County of Porter, Indiana; and City of Valparaiso, Indiana, Appellees–Defendants.**

**No. 64A03–9604–CV–143.**

Court of Appeals of Indiana.

Sept. 25, 1997.

Rehearing Denied Nov. 13, 1997.

James B. Meyer, Meyer, Lyles, & Godshalk, Gary, for Appellant–Plaintiff.

Martin D. Hoke, Knight, Hoppe, Fanning & Knight, Ltd., Schererville, for Porter County, Indiana.

G. Richard Potter, Stephenson Daly Morow & Kurnik, Indianapolis, for City of Valparaiso, Indiana.

Paul A. Rake, Sherry L. Clarke, Eichhorn & Eichhorn, Hammond, for Northern Indiana Public Service Company.

STATON, Judge.

Kelley Bush was injured when the car in which she was a passenger collided with a utility pole owned by the Northern Indiana Public Service Company ("NIPSCO"). She filed a complaint against NIPSCO, the City of Valparaiso, and Porter County (collectively the "Defendants"). She appeals the trial court's grant of summary judgment in favor of the Defendants and presents the following consolidated issues for our review:

I.   Whether NIPSCO owed a duty to Bush regarding the placement of its utility pole.

II.  Whether negligence of the driver was the sole cause of the accident.

We affirm.

The facts most favorable to Bush, the non-movant, indicate that Bush was a passenger in a car driven by Nathan Henderson on Bullseye Road in Valparaiso. Henderson was driving recklessly through an S-curve, accelerated as he exited the curve, and lost control of the car. The car left the road and collided with a utility pole located in the grass, approximately four and one half feet from the road. The pole is located approximately 200 feet past the end of the S-curve. At the time, Henderson was driving approximately forty-five miles per hour. The posted speed limit on that portion of the road is

twenty miles per hour.[1] Bush was rendered a paraplegic as a result of the accident.

## I.

### NIPSCO's Duty

Bush first argues that the trial court erred in determining that NIPSCO owed no duty to her and in granting summary judgment in favor of NIPSCO. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App. 1994), *reh. denied, trans. denied.* We may affirm a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Unless there is a duty owed by one person to another, there can be no negligence. In determining whether NIPSCO owed a common law duty to Bush, we must consider three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), *reh. denied.* This inquiry is a question of law. *Id.*

Bush's claim that NIPSCO owed her a duty must fail because a utility company has a relationship only with those persons using the road as it was intended to be used. *NIPSCO v. Sell,* 597 N.E.2d 329, 332 (Ind.Ct. App.1992), *reh. denied, trans. denied.* Here, Henderson was speeding and driving recklessly which is not the normal use of the road. Thus, no relationship which would give rise to a duty exists. *Id.*

Moreover, the harm suffered by Bush was not foreseeable. The focus in analyzing foreseeability is whether the victim and the type of harm suffered was reasonably foreseeable. *Webb,* 575 N.E.2d at 997.

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Id.* (citations omitted). In some circumstances, it might be reasonably foreseeable that a motorist could leave the road and collide with a utility pole. These situations include when a utility pole is located on a sharp curve, when several prior accidents involving the same pole have occurred, or when the pole is located on an island in the

---

1. Bush argues that the speed limit is disputed and points to the police report which states that the speed limit is thirty miles per hour in that portion of the road. Bush did not designate the police report as evidence in opposition to summary judgment. Although Bush characterizes this failure to designate the police report as "an inadvertent oversight," T.R. 56 limits this court's review to the evidence specifically designated to the trial court. This is not a case where the evidence was cited in the motion or supporting memorandum but simply omitted from the official designation list. The police report is not mentioned anywhere in the summary judgment materials. Thus, this court is precluded from reviewing this evidence in determining whether summary judgment was properly granted.

middle of a dangerous intersection. *State v. Cornelius,* 637 N.E.2d 195, 199 (Ind.Ct.App. 1994), *trans. denied.* However, when there is nothing inherent in the location of the pole to put the utility on notice that an accident might occur, it cannot be said that the harm was foreseeable. *Sell,* 597 N.E.2d at 333. Too, NIPSCO is only required to anticipate the ordinary and normal use of the highway. *Id.* at 332. It is not required to anticipate and guard against the illegal or reckless conduct of motorists.

While it is foreseeable in the general sense that motorists might leave the road and strike a utility pole, Bush presented no evidence to show that it is foreseeable that a motorist would leave the road and strike this particular pole. The pole is located in a grassy area approximately four and one-half feet from the road. It is set in the standard location one and one-half feet from the edge of the right of way and is in line with the other poles in the area. It is not located on a dangerous curve. Instead, the pole in question is located approximately 200 feet past the S-curve. Also, between the road and the pole, there is a curb and a sidewalk. Finally, there have been no other reports of collisions with this pole. This is not like the facts of *Cornelius* where the pole was located in an island at an intersection where the curbs had been removed and the utility company had twice been asked to relocate the pole to a safer location. These facts indicate that this pole was not placed in a dangerous location and that it was not foreseeable that Henderson would drive erratically, causing his car to leave the roadway and strike this pole. Because Bush has presented no evidence which demonstrates that it was foreseeable that the placement of this pole would cause injury to a motorist and a location a foot farther back or to either side would be less dangerous, no duty existed and summary judgment in favor of NIPSCO was proper.

## II.

### Causation

Next, Bush argues that the trial court erred in determining that any negligence committed by Valparaiso or Porter County was not the cause of her injuries.

Causation is an essential element of a negligence claim and the plaintiff bears the burden of proof. *Daub v. Daub,* 629 N.E.2d 873, 877 (Ind.Ct.App.1994), *trans. denied.* The wrongful act must be both the proximate cause and the cause in fact of an injury. *Id.* Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination. *Adams Twp. of Hamilton County v. Sturdevant,* 570 N.E.2d 87, 90 (Ind.Ct.App.1991), *reh. denied, trans. denied.* However, when only a single conclusion can be drawn from the facts, the question of causation becomes a question of law. *Id.* Even though a defendant may have originally set in motion the chain of events which led to an injury, that chain can be severed by a separate intentional or negligent act. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 520 (Ind.1994). The original act then becomes a remote cause and the subsequent act becomes the proximate cause of the accident. *Id.*

In *Miller v. Faulkner,* 506 N.E.2d 52 (Ind. Ct.App.1987), the plaintiff was killed when he attempted to turn left in front of a truck. His estate alleged that the intersection was negligently designed and that the posted speed limit was too high for the road. The trial court granted summary judgment against the estate because it found that the design of the highway was not the cause of the accident. *Id.* at 53. Instead, it was the driver's intentional act of attempting to "beat" the truck at the intersection which caused the accident. *Id.* at 56.

The same is true in the present case. The evidence is disputed concerning whether Valparaiso and Porter County negligently designed and maintained the road. However, it was not this alleged negligence which caused the accident. Instead, it was Henderson's intentional act of driving almost twice the posted speed limit and reckless driving which caused the accident. His actions superseded any liability of Valparaiso and Porter County. *Hooks SuperX,* 642 N.E.2d at 520. Because only one conclusion can be drawn from the facts, the trial court correctly determined as a matter of law that any alleged negligence of Valparaiso and Porter County was not the cause of the accident. *Adams Twp.,* 570

N.E.2d at 90. Accordingly, we conclude that the trial court correctly granted summary judgment in favor of Valparaiso and Porter County.

Affirmed.

GARRARD, J., concurs.

RUCKER, J., dissents with separate opinion.

RUCKER, Judge, dissenting.

I respectfully dissent. In *Goldsberry v. Grubbs,* 672 N.E.2d 475 (Ind.Ct.App.1996) the majority of another panel of this court evaluated the three part test set forth in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991), *reh'g denied.* In so doing the majority noted this court's inconsistent application of the test when applied to cases involving the question of whether a utility company owes a duty to members of the motoring public when the vehicle in which they are riding or driving leaves the traveled portion of a roadway and strikes a pole owned by the utility company. *Goldsberry,* 672 N.E.2d at 478. The majority concluded that the inconsistency was a result of the failure to distinguish between the foreseeability component of duty on the one hand and the foreseeability component of proximate cause on the other. "Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs.... [T]he foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id.* at 479. I agree with the *Goldsberry* majority. As applied to the facts in this case, the distinction between the foreseeability component of duty and the foreseeability component of proximate cause compels the conclusion that NIPSCO owed Bush a duty regarding the placement of its utility pole.

In determining that the harm suffered by Bush was not foreseeable, the majority engaged in an analysis of the particular circumstances of this case. It found for example that there was nothing inherent in the loca-

tion of the pole that would put NIPSCO on notice that an accident might occur and that Bush presented no evidence to show that it is foreseeable that a motorist would leave the road and strike that particular pole. However, as the *Goldsberry* majority pointed out, the forgoing analysis is more appropriate when analyzing foreseeability in the context of proximate cause. When analyzing foreseeability in the context of duty we must focus on the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence. In so doing the conclusion is inescapable. "[R]egardless of the facts that actually occur, it is foreseeable that motorists (or their occupants) will leave the traveled portion of a road and strike utility poles set and maintained along that road." *Id.* at 480. The foreseeability factor in this case weighs in favor of imposing a duty on NIPSCO.

The majority here concludes that there was no relationship between Bush and NIPSCO because Henderson was not using the road as it was intended to be used. However, rejecting this view, another panel of this court has observed "whether the highway was being used as it was intended to be used is a more appropriate consideration under the foreseeability factor [of the duty analysis]." *State v. Cornelius,* 637 N.E.2d 195, 199 (Ind.Ct.App.1994) *trans. denied.* Ind. Code § 8–20–1–28 as in effect on April 19, 1991 imposed a duty on a utility company to erect and maintain utility poles "in such a manner as not to incommode the public in the use of such roads, highways, and water...." [2] This statute evidences a relationship between the utility company erecting poles along the highway and the public which uses the roads. *Cornelius,* 637 N.E.2d at 199; *see also Gilliam v. Contractors United, Inc.,* 648 N.E.2d 1236 (Ind.Ct.App.1995), *trans. denied,* (the fact that a motorcyclist is a member of the public using the highway is sufficient to establish the requisite relationship between him and a contractor performing work on the highway). In this case Bush was a user of the road, and thus a relation-

---

**2.** The record shows the collision at issue occurred on April 19, 1991. The cited statute was amended effective July 1, 1991 and among other things the quoted language was deleted.

ship existed between her and NIPSCO on which a duty can be imposed.

With respect to public policy concerns, again I cite *Goldsberry* on this point, a position with which I agree. "Public policy is not offended by imposing a duty on telephone companies who place fixed objects along the road way. Such objects pose a danger of harm to members of the traveling public who leave the traveled portion of the roadway. Requiring a telephone company to act reasonably and prudently when placing their poles so as not to make such harm unreasonable, is consistent with principles of public policy." *Id.* at 480.

In this case all three *Webb* factors weigh in favor of imposing a duty on NIPSCO. Whether there has been a breach of that duty which proximately caused Bush's injuries are questions of fact which should be left to the jury. I therefore dissent and would reverse the judgment of the trial court.