Linzy MAYFIELD and Sandra
B. Mayfield, Appellants–
Plaintiffs,

v.

THE LEVY COMPANY a/k/a, Edw.
C. Levy Company, Appellee–
Defendant.

No. 45A03–0412–CV–569.

Court of Appeals of Indiana.

Aug. 30, 2005.

---

Jeffrey S. Wrage, Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellants.

Terence M. Austgen, Elizabeth M. Bezak, Jill M. Grecco, Munster, for Appellee.

## OPINION

MATHIAS, Judge.

Linzy Mayfield ("Mayfield") and Sandra Mayfield filed a complaint against the Levy Company a/k/a Edw. C. Levy Company ("Levy") in the Superior Court of Lake County alleging that injuries Mayfield sustained in a workplace accident

were caused by Levy's negligence. Levy filed a motion for summary judgment arguing that Levy did not breach any duty owed to Mayfield and its conduct was not the proximate cause of Mayfield's accident and resulting injuries. The trial court granted Levy's motion. Mayfield appeals and raises several issues. However, we need only address the following dispositive issue: whether the trial court properly found that Levy's conduct was not the proximate cause of Mayfield's injuries as a matter of law.[1] Concluding that an intervening cause superseded any liability on the part of Levy, we affirm.

**Facts and Procedural History**

Levy and Mayfield's employer, LTV Steel, had a contract which provided that Levy would perform the task of removing slag (a byproduct of the steel-making process) from LTV Steel's slag pits. Under the contract, Levy was responsible for cooling the slag, removing the slag from the slag pits, and hauling the slag to Levy's processing area. To cool the slag,[2] Levy sprayed the slag with water. Any water that did not evaporate during the cooling process would accumulate in a trench in the sump pump area. A Levy employee was responsible for turning the sump pumps on and off and draining the excess water.

Mayfield was employed as a train switchman at LTV Steel. Mayfield's duties included transporting iron ladles from the Basic Oxygen Furnace to the blast furnace. Mayfield's partner, the train operator, was responsible for operating the engine of the train.

On March 18, 2000, Mayfield was riding the train near the rear ladle when he saw an LTV Steel truck approaching. Mayfield feared the truck was trying to beat the train across the track, and the train and truck were going to collide. Mayfield therefore stepped off the train. At the same time, the engine operator applied the brakes, accelerating Mayfield's dismount from the train. As Mayfield stepped away from the train, his foot came into contact with a "football or basketball" size piece of slag. Appellant's App. p. 76. Mayfield fell backwards and his entire body slid into a trench filled with scalding water. Mayfield suffered serious burns as a result of the accident.

On November 22, 2000, Mayfield filed a complaint against Levy alleging that Levy breached its duty to exercise due care and "[a]s a direct and proximate result of the defendant's breach of duty, ... Mayfield has suffered serious physical injuries and physical disabilities.... Linzy Mayfield's injuries were proximately caused by the Defendant's negligence." Appellant's App. p. 12. On March 19, 2004, Levy filed a motion for summary judgment arguing that Levy "did not breach any legal duty owed to Mayfield" and his "accident and injuries resulted from several unforeseeable intervening and superceding causes." Appellant's App. p. 19. On June 11, 2004, Mayfield filed a response and cross-motion for summary judgment asserting that Levy breached its duty as a matter of law.

The trial court issued an order granting Levy's motion for summary judgment on

---

1. Mayfield also raised the following issues in his brief: 1) Whether the trial court erred when it concluded that Levy did not breach any duty owed to Mayfield as a matter of law; 2) Whether the trial court erred when it found that evidence concerning a prior accident was inadmissible; and 3) Whether the trial court abused its discretion when it struck portions of an affidavit that Mayfield designated to the court with his response to Levy's motion for summary judgment.

2. The slag enters the slag pit at a temperature of approximately 2700 degrees. Appellant's App. p. 298.

November 10, 2004, and found in pertinent part:

9. Levy Company serves as an independent contractor performing slag work at LTV Steel. The terms of the contract between LTV Steel and Levy Company stipulate that LTV Steel was responsible for the water systems, the sump systems and the piping. LTV Steel was also responsible for the design and construction of the entire system in question. Further, the evidence indicates that Levy Company does not own the premises upon which Mayfield was injured; rather LTV Steel is the rightful owner of said premises [ ]. Consequently, Levy Company did not breach any legal duty owed to Mayfield since Levy Company did not maintain control over the water and pump systems.

10. Even if Levy Company were found to be in possession of the area in question, pursuant to Restatement 2nd of Torts, Section 343, a possessor of land is subject to liability for physical harm caused to his invitees by a condition of the land if, but only if, the landowner/occupier had superior knowledge with regard to any dangers on the premises. The evidence fails to establish that Levy Company had superior knowledge with regard to any dangers on the premises. *Armstrong v. Cerestar*, 775 N.E.2d 360 (Ind.Ct.App.2002). The evidence clearly establishes that Mayfield had worked under these conditions for years; therefore he had knowledge of the area and any dangers that may exists [sic] on the premises.

11. [Mayfield] fails to designate evidence showing that the injury to Mayfield was foreseeable. The conduct of the LTV Steel truck driver in crossing the track was not foreseeable. Levy Company was not responsible for the operation of the train or truck in the area in which Mayfield was injured. Mayfield's own conduct contributed to his injury because he chose to sit on the wrong side of the train and consequently jumped from the wrong side of the train.

12. There are no genuine issues of material fact and [Levy] is entitled to summary judgment as a matter of law.

Appellant's App. pp. 9–10. Mayfield now appeals.[3] Additional facts will be provided as necessary.

### Standard of Review

Our standard for reviewing a summary judgment motion is the same standard used in the trial court:

Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind.2001) (citations omitted). "A party seeking summary judgment bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law." *Harco, Inc. of Indianapolis v. Plainfield Family Dining Assoc.*, 758 N.E.2d 931, 937 (Ind.Ct.App.2001) (citation omitted). All pleadings, affidavits, and testimony are to be construed liberally and in the light most favorable to the nonmoving party. *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct.App.1999).

**3.** We hereby deny Levy's motion for oral argument.

For summary judgment purposes, a fact is "material" if it bears upon the ultimate resolution of relevant issues. *Orban v. Krull,* 805 N.E.2d 450, 453 (Ind.Ct.App. 2004). "[A]ny doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party." *Am. Mgmt., Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 428 (Ind.Ct.App.1996). "Even if it appears that the nonmoving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences." *Thayer v. OrRico,* 792 N.E.2d 919, 923 (Ind.Ct.App.2003), *trans. denied* (citation omitted). Finally, "[o]ur analysis proceeds from the premise that summary judgment is a lethal weapon and that courts must be ever mindful of its aims and targets and beware of overkill in its use." *Bunch v. Tiwari,* 711 N.E.2d 844, 847 (Ind.Ct.App.1999).

### Discussion and Decision

■ Mayfield argues that Levy breached its duty to correct two dangerous conditions that proximately caused his injuries: the piece of slag left on the ground and the amount of scalding water present in the trench in the sump pump area. *See* Br. of Appellant at 24. In response, Levy asserts that the undisputed material facts establish that its conduct was not the proximate cause of Mayfield's accident, and therefore, the trial court properly granted its motion for summary judgment. *See* Br. of Appellee at 12.

■ Mayfield must establish three elements in order to recover under a theory of negligence: (1) the existence of a duty on the part of Levy to conform its conduct to a standard of care arising from its relationship with Mayfield; (2) Levy's failure to conform its conduct to the requisite standard of care; and (3) an injury to Mayfield proximately caused by Levy's breach. *See Nance v. Holy Cross Counseling Group,* 804 N.E.2d 768, 771 (Ind.Ct. App.2004), *trans. denied.* "A negligence action is rarely an appropriate case for disposal by summary judgment" because "issues of negligence, causation, and reasonable care are most appropriately left for a determination of the trier of fact." *Guy's Concrete, Inc. v. Crawford,* 793 N.E.2d 288, 293 (Ind.Ct.App.2003), *trans. denied.*

■ As the moving party, and in order to establish that it was entitled to judgment as a matter of law, Levy was required to demonstrate that the undisputed facts negate at least one element of Mayfield's case.[4] *See Collins v. J.A. House, Inc.,* 705 N.E.2d 568, 571 (Ind.Ct. App.1999), *trans. denied.* The trial court granted Levy's motion for summary judgment after finding that the undisputed facts established that Levy's actions were not the proximate cause of Mayfield's injuries. *See Correll v. Ind. Dep't of Transp.,* 783 N.E.2d 706, 708 (Ind.Ct.App.2002) ("[W]hen only a single conclusion can be

4. Because we conclude that the undisputed material facts establish that Levy's alleged negligence was not the proximate cause of Mayfield's injuries, we do not address Mayfield's argument that Levy's owed him a duty and breached that duty as a matter of law. Mayfield relies on the theory of premises liability in arguing that Levy breached its duty. Under the theory of premises liability, "whether a duty is owed depends primarily upon whether the defendant was in control of

the premises when the accident occurred. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *See Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind.2004). If we were to address Mayfield's argument, we would likely conclude that whether Levy or LTV Steel was in control of the sump pump area where the accident occurred is a question that must be resolved by the trier-of-fact.

drawn from the facts, the question of causation becomes a question of law.").

"Whether an act is the proximate cause of a plaintiff's injury depends upon whether the injury was a natural and probable consequence of the act in issue, which, in light of the attending circumstances, could have been reasonably foreseen or anticipated." *Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 273 (Ind.Ct. App.2004) (citation omitted). If an independent agency intervenes between the defendant's negligence and the resulting injury, the chain of causation may be broken. *Id.* "The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury." *Id.* Where the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of all liability resulting from the original negligent act. *Id.; see also Correll*, 783 N.E.2d at 708 (citation omitted) ("[T]o constitute an intervening cause sufficient to preclude the original wrongdoer's liability the intervening conduct must be an independent act which interrupts the natural consequence of the events.").

In *Woods v. Qual–Craft Industries, Inc.*, 648 N.E.2d 1198 (Ind.Ct.App.1995), *trans. denied,* Woods, a carpenter, was standing on a scaffold which collapsed when the pump jacks used to adjust the height of the scaffolding planks failed to work properly. Woods fell approximately twenty-five feet to the ground and landed on concrete slabs which were located beneath the scaffold. *Id.* at 1200. The scaffold was erected over the concrete slabs which were left in that area by a Custom Concrete employee. *Id.* Woods filed a complaint against Custom Concrete alleging that it had negligently left the concrete slabs on the job site, and that he sustained injury as a direct and proximate result of its negligence. *Id.*

In affirming the entry of summary judgment in favor of Custom Concrete, our court stated:

> Custom Concrete's actions were not the proximate cause of Woods' injuries, because Woods' injuries could not have been reasonably foreseen as the natural and probable consequences of leaving concrete in a dug out area outside the foundation wall. Rather, the intervening collapse of the scaffold, which also could not have been reasonably foreseen by Custom Concrete, was the proximate cause of Woods' injuries. Thus, this intervening cause superseded any liability on the part of Custom Concrete.

*Id.* at 1202.

Relying on *Woods*, our court reached a similar result in *Collins v. J.A. House, Inc.*, In that case, Collins, a bricklayer, was positioned on the third level of a scaffold when a gust of wind inflated visqueen, which was placed over the scaffold to protect workers from adverse weather conditions. 705 N.E.2d at 570. When the visqueen inflated, the boards and other objects holding the visqueen in place fell from the top of the scaffold. *Id.* When Collins saw the falling objects, he jumped from the third-level platform through a second-story window of the building. *Id.* at 570–71. He then fell approximately six to eight feet and landed on a metal pipe left by J.A. House, the plumbing and mechanical contractor. *Id.* at 571.

The trial court entered summary judgment in favor of J.A. House after concluding that J.A. House's act of leaving the pipe was not the proximate cause of Collins's injuries. On appeal, we affirmed the trial court, stating:

... although it was foreseeable that House's failure to keep its work area clean might cause injuries to another worker laboring on or passing through the second floor area, it was not reasonably foreseeable that its alleged failure would cause injuries to a worker positioned on a scaffold on the outside of the building and forced by an emergency to jump through the second-story window. Because House could not have reasonably anticipated that the visqueen would have inflated and caused boards and other objects to fall onto the scaffold, it was relieved of any liability for the alleged negligent act.

*Id.* at 573.

Finally, we note our court's decision in *Bush v. Northern Indiana Public Service Co.,* 685 N.E.2d 174 (Ind.Ct.App.1997), *trans. denied.* In that case, the passenger in a car was seriously injured when the driver accelerated as he exited an S-curve and lost control of the car. *Id.* at 176–77. As a result, the car left the roadway and collided with a utility pole. *Id.* The passenger sued Valparaiso and Porter County alleging that they negligently designed and maintained the roadway. *Id.* at 178.

On appeal of the entry of summary judgment in favor of Valparaiso and Porter County, we observed that although "[t]he evidence is disputed concerning whether Valparaiso and Porter County negligently designed and maintained the road[,] ... it was not this alleged negligence which caused the accident." *Id.* "Instead, it was [the driver's] intentional act of driving almost twice the posted speed limit and reckless driving which caused the accident. His actions superseded any liability of Valparaiso and Porter County." *Id.*

In this case, the facts are undisputed that Mayfield, an employee of LTV Steel, was riding on a train hauling iron ladles when he observed an LTV Steel truck approaching the train track. Mayfield believed that the truck was trying to beat the train across the track. Appellant's App. p. 73. Fearing that the truck and train were going to collide, Mayfield stepped off of the train. Appellant's App. pp. 82–83. As Mayfield was backing away from the train, he stepped on a piece of slag, fell backwards, and slid into a trench in the sump pump area, which was filled with scalding water. Appellant's App. pp. 76–81. Mayfield admitted that the only reason he stepped off the train was because the truck was trying to beat the train across the track. Appellant's App. p. 226.

Like the circumstances presented in *Collins,* while it was foreseeable that Levy's failure to remove the slag from the ground or its failure to drain the water might cause injuries to a person walking near the sump pump area, it was not foreseeable that Levy's alleged failure to maintain that area would cause injuries to an individual riding a train hauling iron ladles. Levy could not have reasonably foreseen that an LTV Steel truck would try to beat the train across the tracks creating the risk of a collision between the train and truck. It was not Levy's alleged negligent conduct therefore, but rather, the negligent, reckless, or intentional conduct of the LTV Steel truck driver that caused Mayfield's accident. The truck driver's actions constitute an intervening cause superseding any liability on the part of Levy. Accordingly, we conclude that Levy's actions were not the proximate cause of Mayfield's injuries.

Because the undisputed material facts establish that Levy's alleged negligent conduct was not a proximate cause of Mayfield's accident, Levy negated one element of Mayfield's negligence claim. We therefore conclude that the trial court properly

determined that Levy was entitled to summary judgment as a matter of law.

Affirmed.

DARDEN, J., and CRONE, J., concur.