# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jeffrey J. Stesiak
James P. Barth
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE,
MENARD, INC.

Karl J. Veracco
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Walter Griffin, Jr., and Candus Griffin,

*Appellants-Plaintiffs,*

v.

Menard, Inc. and Briggs Plumbing, LLC,

*Appellee-Defendants.*

October 20, 2020

Court of Appeals Case No. 20A-CT-310

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No. 20D02-1603-CT-56

**Pyle, Judge.**

# Statement of the Case

Walter ("Walter") and Candus Griffin ("Candus") (collectively, "the Griffins") appeal the trial court's grant of summary judgment in favor of Menard, Inc. ("Menard"). This appeal originates from a complaint filed by the Griffins alleging premises liability negligence and loss of consortium based on an incident at Menard wherein the bottom of a box containing a sink opened when Walter pulled the box off the shelf, and the sink fell on Walter.

The Griffins argue that the trial court erred by granting summary judgment in favor of Menard. Specifically, they argue that: (1) Menard failed to negate the breach of duty element of their premises liability negligence claim because questions of fact exist as to whether Menard had knowledge of the defectively packaged sink on its shelf; (2) there was a presumption of negligence created under the doctrine of *res ipsa loquitur*; and (3) there was an inference of negligence created under the doctrine of spoliation.

We conclude that, based on the evidence designated to the trial court, Menard failed in its initial burden of showing the absence of a genuine issue of material fact regarding whether it had actual or constructive knowledge of whether the particular sink box was defective. Additionally, Menard failed to meet its initial burden of showing an absence of material fact on the Griffins' *res ipsa loquitur* claim. However, we conclude that Menard met its burden of negating an element of the Griffins' spoliation claim. Accordingly, we affirm the grant of summary judgment in favor of Menard on the spoliation claim and reverse the

grant of summary judgment with respect to the Griffins' claims of premises liability negligence and *res ipsa loqutur*.

[4] We affirm in part, reverse in part, and remand.

## Issue

Whether the trial court erred in granting summary judgment in favor of Menard.

## Facts

[5] The facts most favorable to the Griffins, the non-moving party in this summary judgment action, reveal that on May 31, 2015, the Griffins were shopping at a Menard home improvement store in Elkhart, Indiana. The Griffins were interested in purchasing a new bathroom vanity sink. After seeing a model that they liked, Walter grabbed the box that contained the desired sink. The box was located on the second shelf. Walter reached up and grabbed the two handles on the box and began to remove the box from the shelf. As Walter pulled the box off the shelf, the bottom part of the box opened, and the sink fell on Walter. Walter sustained injuries to the right side of his neck, right shoulder, and right foot.

[6] On March 9, 2016, the Griffins filed a complaint for damages against Menard, claiming premises liability negligence and loss of consortium. On July 30, 2018, Menard filed a third-party complaint against Briggs Plumbing Products, LLC, who had manufactured and boxed the sink. On May 1, 2019, Menard

filed a motion for summary judgment and a supporting brief. In support of its motion, Menard designated portions of depositions given by Walter and Candus and an affidavit by Brent Bahr ("Bahr"), the Menard store's general manager whom Menard had selected as the most knowledgeable person to respond about the May 31 incident and store policies and procedures. In the designated portion of Walter's deposition, he acknowledged that he had not noticed that the staples were loose on the bottom of the sink box. In his affidavit, Bahr stated that "[i]t is the policy and practice of Menards that if there is any problem with the box or packaging of any item, they are not to be placed upon the shelves for sale." (App. Vol. 2 at 77). He further declared that "[i]f a Mendards' employee would [have] notice[d] . . . any defect or other issue with regard to the boxes containing the Briggs Plumbing sinks, that employee would not have placed the sink with the defective packaging on the shelf." (App. Vol. 2 at 77). Bahr also stated that "Menards had no prior notice of any defect or problem with the box containing the Briggs Plumbing sink involved in the incident involving Walter[,]" and that he had "never received any notice of and [was] not aware of any circumstances where a sink manufactured by Briggs . . . ha[d] fallen through the bottom of its box." (App. Vol. 2 at 77). Relying primarily on Walter's deposition testimony and Bahr's affidavit, Menard argued that it was entitled to summary judgment on the Griffins' premises liability negligence claim because it "had no actual or constructive notice of any dangerous condition which led to Walter['s] . . . injur[ies]." (App. Vol. 2 at 62).

[7] In the Griffins' summary judgment response, they argued that Menard's motion for summary judgment should be denied because there: (1) were issues of material fact regarding Menard's constructive knowledge; (2) was a clear inference of negligence under the doctrine of *res ipsa loquitur*; and (3) was an inference of negligence under the doctrine of spoliation.

[8] The Griffins first argued that the trial court should deny Menard's summary judgment motion because Menard had "failed to designate any evidence that it exercised reasonable care or attempted to discover the danger but was unable to do so." (App. Vol. 2 at 89). The Griffins' designated evidence included Bahr's deposition, wherein he testified about Menard general practices, policies, and procedures. Bahr first explained that employees are trained to identify defective merchandise. Specifically, if there is defective merchandise:

> whether it's received off of incoming trucks before it goes to the floor or once it's on the floor, you know, team members doing their cleaning and, you know, walking by products, if they see something unsafe, damaged, unsellable, we have a defect program in place to take that merchandise off the shelf and bill it back to the vendor.

(App. Vol. 2 at 128).

[9] Additionally, Bahr testified that Menard has "general practices" of end-of-the-night "front and facing" and daily "sectioning." (App. Vol. 2 at 129). The front and facing practice requires employees to go through every aisle every night to "bring every product forward, clean it, front it, [and] face it." (App. Vol. 2 at 129). Bahr explained that the sectioning practice entails breaking up each of Menard's sales departments into sections to "thoroughly detail each

section where [employees] would, 4 foot at a time, inspect every product in that section, dust it, clean it, bring it forward, make sure that section is perfect. And we do a section a day in every department and rotate." (App. Vol. 2 at 130). The employee responsible for sectioning is supposed to inspect every product from "left to right." (App. Vol. 2 at 130). Bahr further explained that Menard provides "maps that correlate the dates of the month with what section we should be doing that day." (App. Vol. 2 at 130). However, Bahr stated that the "map . . . [is] a guideline. It doesn't necessarily mean that zone was done that day." (App. Vol. 2 at 154). Bahr further explained that he did not have a "way to verify if a department did that section or who did that section that day." (App. Vol. 2 at 130).

[10] The Griffins' designated portion of Bahr's deposition also included Menard's standard procedure for dealing with an incident. Bahr explained that employees are required to fill out an incident report and gather as much information as possible from the claimant. The employee is then supposed to check the cameras to see if any surveillance video footage captured the incident and save the footage. Bahr testified that in relation to the May 31, 2015 incident, neither he nor his employees had investigated whether there had been any surveillance video footage of the incident. Furthermore, Bahr admitted that Menard employees do not always follow the policies. Additionally, he stated that there is no formal policy that requires employees to read the policies.

[11] The Griffins next argued that under the doctrine of *res ipsa loquitur*, "the designated facts and reasonable inferences drawn therefrom show that

[Menard] had the management and control of its store, the stocking of the shelves, and the inspection for and removal of defective products." (App. Vol. 2 at 91). As a result, they contended that summary judgment was inappropriate because there was a clear inference of negligence. Finally, the Griffins argued that Menard's "failure to follow its own procedures resulted in the deletion and loss of any relevant video footage." (App. Vol. 2 at 92). Therefore, the Griffins alleged that Menard's summary judgment motion was precluded based on a spoliation inference.

[12] Thereafter, Menard filed its reply to the Griffins' summary judgment response. Menard argued that: (1) the Griffins had failed to show an issue of material fact regarding whether it had actual or constructive knowledge of the defective condition of the box at issue; (2) the doctrine of *res ipsa loquitur* was not applicable because the box was not in Menard's exclusive control at the time of the accident; and (3) the doctrine of spoliation was not applicable because the Menard store did not have a camera in the specific area of the plumbing department that would have recorded the incident in question. As supplemental designated evidence, Menard attached its' responses to interrogatories and a portion of Bahr's deposition. In relevant part, Menard's responses stated:

> **INTERROGATORY NO. 2:** When was the last time the section in which the sink was stocked had been "faced/shelved" or stocked.
>
> **ANSWER:** Menards' Daily Manager's Responsibilities (To-Do Lists and Department Closing Checklist) – Policy & Procedure #204 requires the team members to inspect and reface all

inventory at least every 8 days. Each area of the store is broken down into 8 specific sections which are inspected and refaced every day on a rotating basis. Thus, every 8 days all inventory in the entire area is inspected and refaced. There are no records maintained pertaining to the inspection and refacing of the areas/sections.

**INTERROGATORY NO. 3:** When was the sink received by Menards, stocked.

**ANSWER:** Unknown.

**INTERROGATORY NO. 4:** How long had the sink been on the shelf.

**ANSWER:** Unknown.

* * *

**INTERROGATORY NO. 6:** At the time of the incident, was there surveillance coverage of the aisle where the incident is alleged to have occurred?

**ANSWER:** No.

(App. Vol. 2 at 182-83). Bahr's designated deposition testimony explained that there was no surveillance video recorded of the incident on May 31, 2015, the stocking of the Briggs Plumbing box on the shelf, or the receiving dock where inventory is received. Bahr further explained that the surveillance cameras have changed since 2015.

[13] The trial court conducted a hearing and granted summary judgment to Menard. Thereafter, the trial court amended its summary judgment, making it a final appealable order. The Griffins now appeal. We will add additional facts when necessary.

# Decision

The Griffins argue that the trial court erred by granting summary judgment to Menard because: (1) Menard failed to negate the breach of duty element of their premises liability negligence claim because questions of fact exist as to whether it had knowledge of the defectively packaged sink on its shelf; (2) there was a presumption of negligence created under the doctrine of *res ipsa loquitur*; and (3) there was an inference of negligence created under the doctrine of spoliation. We will address each argument in turn.

## 1. Actual or Constructive Knowledge

The Griffins first argue that the trial court erred in granting summary judgment in favor of Menard because there were questions of fact as to whether Menard had knowledge of its inventory's defective packaging. Our standard of review is well-settled.

> We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate[ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks

and substitution omitted).  And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[16]   We emphasize that summary judgment is a "high bar" for the moving party to clear in Indiana.  *Id.* at 1004.  "In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof [at trial] *lacks* evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'"  *Id.* at 1003 (quoting *Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)).

[17]   Here, the Griffins filed their complaint against Menard claiming premises liability, which is rooted in negligence.  In order to recover under a theory of negligence, the Griffins must establish:  (1) the existence of a duty on the part of Menard to conform its conduct to a standard of care arising from its relationship with Walter; (2) Menard's failure to conform its conduct to the requisite standard of care; and (3) an injury to Walter proximately caused by Menard's breach.  *Mayfield v. Levy Co.*, 833 N.E.2d 501, 505 (Ind. Ct. App. 2005).  Generally, "'[a] negligence action is rarely an appropriate case for disposal by summary judgment'" because "'issues of negligence, causation, and reasonable care are most appropriately left for a determination of the trier of

fact.'" *Id*. (quoting *Guy's Concrete, Inc. v. Crawford*, 793 N.E.2d 288, 293 (Ind. Ct. App. 2003), *trans. denied*).

[18] Neither party disputes that, at the time of the incident, Walter was a business invitee of Menard. "Under Indiana's premises liability law, a landowner owes the highest duty to an invitee: the duty to exercise reasonable care for his protection while he is on the landowner's premises." *Converse v. Elkhart Gen. Hosp.*, 120 N.E.3d 621, 625 (Ind. Ct. App. 2019). Indiana has adopted the Restatement (Second) of Torts Section 343, which defines the scope of the duty a landowner owes to an invitee on its property as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id*. (quoting Restatement (Second) of Torts § 343 (1965)). Each of the three conditions set forth in Section 343 must be met for liability to attach. *Harradon v. Schlamadinger*, 913 N.E.2d 297, 301 (Ind. Ct. App. 2009), *trans. denied*.

[19] Additionally, an invitee is "entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of

the actual condition and the risk involved." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002) (citing Restatement (Second) of Torts § 343, cmt. d), *trans. denied*. While a landowner's duty to a business invitee includes a duty to exercise reasonable care to protect the invitee from foreseeable dangers on the premises, there is no duty to insure a business invitee's safety while on the premises. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). "As an invitor is not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Id*. We have defined constructive knowledge as a "'condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.'" *Id*. (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992), *trans. denied*).

[20] Here, because Walter was a business invitee at the time of the incident on Menard's premises, Menard owed Walter the duty of care set out above. The Griffins argue that Menard is not entitled to summary judgment because it failed to negate the breach of duty element of their negligence claim based on premises liability. Specifically, the Griffins argue that questions of fact exist as to whether Menard had knowledge of the defectively packaged sink on its shelf. Menard maintains that the designated evidence shows that it did not have actual or constructive knowledge of any dangerous condition which led to Walter's injury. We agree with the Griffins.

As the moving party in this summary judgment action, Menard had the burden to negate an element of the Griffins' claim by establishing that no genuine issues of material fact exist regarding the element. *See Jarboe*, 644 N.E.2d at 123. More specifically, Menard had the burden of showing, as a matter of law, the absence of a genuine issue of material fact relating to breach of its duty to Walter when he was an invitee on Menard's premises.

The trial court granted Menard's motion for summary judgment after finding that the undisputed facts established that Menard did not have actual or constructive knowledge that the sink's box was defective. In making its ruling, the trial court relied on the following evidence:

> General Manager Brent Bahr, who had been employed with Menard, Inc. since 2000, had "never received any notice of and was not aware of any circumstances where a sink manufactured by Briggs Plumbing had fallen through the bottom of its box." Employees would not place any sinks with defective packages onto the store's shelves. Furthermore, "Menards had no prior notice of any defect or problem with the box containing the Briggs Plumbing sink involved in the incident[.]"

(App. Vol. 2 at 21-22) (internal citations omitted).

However, there is conflicting evidence. Some evidence shows that "[i]t is the policy and practice of Menards that if there is any problem with the box or packaging of any item, they are not to be placed upon the shelves for sale." (App. Vol. 2 at 77). But this is contradicted by Bahr's testimony that Menard does not have a formal policy requiring that employees read the policies. As such, he admitted that Menard employees do not always follow proper

procedures.  Furthermore, Menard failed to designate evidence showing that this particular box had been inspected.  Moreover, in response to the Griffins' interrogatories, Menard indicated that it had no knowledge regarding when the sink at issue had been received or how long it had been on the shelf.  The only designated evidence of investigative measures taken by Menard was that its employees are *supposed* to inspect all inventory in an entire area every eight days.  According to Bahr, he could not verify if, or when, the section where the sink fell on Walter had last been inspected.

[24]   In support of its summary judgment claim, Menard draws our attention to *Gasser Chair Co., Inc. v. Nordengreen*, 991 N.E.2d 122 (Ind. Ct. App. 2013).  In *Gasser*, a casino patron was injured when the adjustable chair she was sitting on collapsed due to a failed gas cylinder in the chair.  She sued both the casino and the chair manufacturer.  The trial court granted summary judgment to the casino on the patron's premises liability claim and denied summary judgment to the chair manufacturer.  The chair manufacturer then appealed the trial court's grant of summary judgment to the casino, arguing in part that there were genuine issues of fact regarding the casino's knowledge of the defective nature of the chair on its premises.  This Court affirmed the grant of summary judgment to the casino, which had negated the element regarding its knowledge of a dangerous condition on its premises.  We concluded that there was no genuine issue of fact that the casino had actual or constructive knowledge that the chair was a dangerous condition on its premises.  *Gasser*, 991 N.E.2d 126-27.  In reaching this decision, we explained that the chairs were inspected daily,

no problems had been reported with the chair the patron had used, that the chair manufacturer had not warned the casino about the danger of the gas cylinder suddenly falling, and that although there had been some previous problems with a very small percentage of chairs at the casino, none of those problems had caused injuries. *Id*. at 127.

[25] The facts of *Gasser* can be distinguished from the facts of this case. Significantly, unlike in *Gasser* where the chairs were inspected daily, there was no evidence designated establishing when the defective box had last been inspected. Indeed, Bahr stated that he could not verify if, or when, the section where the sink fell on Walter had last been inspected. Furthermore, Bahr testified that employees do not always follow Menard's own policies. Because the defective box was on the shelf for an unspecified period of time, there remains a question of fact regarding whether Menard had actual or constructive knowledge that the sink box was a dangerous condition on its premises.

[26] Viewing this evidence in light of the facts most favorable to the Griffins, the non-movants, we must conclude that Menard has failed to meet its initial burden of negating the breach of duty element of the Griffins' negligence claim based on premises liability. *See*, *e.g.*, *Sinner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1189 (Ind. 2016) (noting that under Indiana law, summary judgment movant has the burden of affirmatively negating an opponent's claim).

## 2. *Res Ipsa Loquitor*

[27] Next, the Griffins argue that there is a presumption of negligence under the doctrine of *res ipsa loquitur*. *Res ipsa loquitur* is translated from Latin as "the thing speaks for itself." *Gary Cmty. Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 247 (Ind. Ct. App. 2014), *trans. denied*. *Res ipsa loquitur* is a rule of evidence that permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury. *Johnson v. Blue Chip Casino, LLC*, 110 N.E.3d 375, 378 (Ind. Ct. App. 2018), *trans. denied*. Under *res ipsa loquitur*, negligence may be inferred where: (1) the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants; and (2) the accident is such that in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care. *Volger v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct. App. 1993), *reh'g denied*, *trans. denied*. To invoke *res ipsa loquitur*, the plaintiff must demonstrate that the defendant had exclusive control of the injuring instrumentality at the time of the injury. *Rector v. Oliver*, 809 N.E.2d 887, 890 (Ind. Ct. App. 2004). "The element of 'exclusive control' is an expansive concept which focuses upon who has the right or power of control to exercise it, rather than actual physical control." *Volger*, 624 N.E.2d at 61 (internal citations omitted). Further, exclusive control is satisfied if the defendant had control at the time of the alleged negligence. *Id*. at 61-62.

[28] In this summary judgment proceeding, Menard argued, and the trial court found, that the Griffins "cannot establish that Menards was in exclusive control of the defective box at the time of the incident at issue in this case." (App. Vol.

2 at 171). However, "[m]erely alleging that the plaintiff has failed to produce evidence on each element of [his cause of action against the defendant] is insufficient to entitle the defendant to summary judgment under Indiana law." *Jarboe*, 644 N.E.2d at 123. As the moving party, Menard had the burden to negate the control element. *Id.* The designated evidence demonstrates that Menard had the management and control of its premises. Moreover, Menard also had the power to control the stocking of the shelves, and the inspection and removal of defective products. These details leave open an issue of material fact as to the element of exclusive control.

### 3. Spoliation

[29] Last, the Griffins argue that the trial court erred by granting summary judgment to Menard on the Griffins' spoliation theory, and they contend that designated evidence created an inference of negligence under the doctrine of spoliation. "Spoliation is a particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence." *N. Ind. Pub. Serv. Co. v. Aqua Envtl. Container Corp.*, 102 N.E.3d 290, 300 (Ind. Ct. App. 2018) (internal quotation omitted). A party raising a claim of spoliation must prove that (1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence. *Id.* at 301.

[30] Here, Menard designated evidence showing that there was not a camera in the Menard store that could have captured video of the incident. Specifically,

Menard's responses to interrogatories stated that, at the time of the incident, there was no surveillance coverage of the aisle where the incident occurred. We agree with the trial court that Menard "cannot have sought to wrongfully conceal that which did not exist." (App. Vol. 2 at 26). We therefore conclude that the trial court did not err in finding that the doctrine of spoliation was inapplicable to this case.

**Conclusion**

[31] In conclusion, the evidence designated to the trial court demonstrates that Menard did not meet its initial summary judgment burden of showing an absence of a genuine issue of material fact regarding the breach of duty element of the Griffins' negligence claim based on premises liability. In addition, Menard failed to meet its initial burden of showing an absence of material fact on the Griffins' *res ipsa loquitur* claim. However, Menard did meet its burden of negating an element of the Griffins' spoliation claim. Accordingly, we affirm the grant of summary judgment in favor of Menard on the spoliation claim and reverse the grant of summary judgment with respect to the Griffins' claims of premises liability negligence and *res ipsa loqutur*.

[32] Affirmed in part, reversed in part, and remanded for further proceedings.

Kirsch, J., and Tavitas, J., concur.